**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Henderson Jordan,

Petitioner,

v.

Charles L. Ryan, et al.,

Respondents.

No. CV-14-0747-PHX-JAT (ESW)

**REPORT AND RECOMMENDATION**

**TO THE HONORABLE JAMES A. TEILBORG, UNITED STATES SENIOR DISTRICT JUDGE:**

Henderson Jordan ("Petitioner") is currently incarcerated at the Corrections Corporation of America's Red Rock Correctional Center in Eloy, Arizona. On April 10, 2014, Petitioner filed an amended third Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. 5) (the "Current Habeas Petition"). On August 28, 2014, Respondents filed their Answer (Doc. 15). Petitioner filed a reply on October 10, 2014 (Doc. 18). The matter is deemed ripe for consideration.[1]

Prior to filing the Current Habeas Petition, Petitioner filed an "Application for Leave to File a Second or Successive Petition Under 28 U.S.C. § 2254" in the Ninth Circuit Court of Appeals. The Ninth Circuit found that one of Petitioner's proposed

---

[1] The case was reassigned to U.S. Magistrate Judge Eileen S. Willett on November 14, 2014.

grounds for relief, the wrongful denial of parole, could not have been raised at the time Petitioner filed his first habeas petition. The Ninth Circuit thus held that Petitioner was not required to obtain leave to present the claim in a subsequent habeas petition. As the Current Habeas Petition contains only the wrongful denial of parole claim, the undersigned does not find that the Current Habeas Petition is a "second or successive" petition. The undersigned, however, finds that the claim is procedurally defaulted. It is therefore recommended that the Current Habeas Petition be denied and dismissed with prejudice.

## I. BACKGROUND

Petitioner is serving 38 years for convictions arising out of an automobile accident that resulted in an individual's death. (Doc. 15-1 at 3-4). Petitioner was taken to the hospital after the accident, and tested positive for drug use. (*Id*. at 3).

On April 19, 1994, the Maricopa County Grand Jury indicted Petitioner on four felony counts: Count 1 (manslaughter); Count 2 (use of narcotic drugs); Count 3 (use of marijuana); Count 4 (possession of drug paraphernalia). (Doc. 15-1 at 15-16). The indictment indicated that Count 1 (manslaughter) is a class 3 felony. However, a statutory amendment to ARIZ. REV. STAT. § 13-1103 that became effective on January 1, 1994 raised the crime of manslaughter from a class 3 felony to a class 2 felony. In its Motion to Amend Indictment, the State explained that neither the Maricopa County Attorney nor Grand Jury is authorized or has the desire to designate manslaughter as a class 3 felony after the amendment's effective date. (Doc. 15-1 at 25). The State thus moved to amend the indictment to reflect that Count 1 (manslaughter) is a class 2 felony rather than a class 3 felony, explaining that the erroneous reference was a typographical error. (Doc. 15-1 at 25). The trial court granted the State's motion. (Doc. 15-2 at 3-4).

Petitioner's trial began on August 24, 1994. (*Id*. at 7). On September 29, 1994, the jury found Petitioner guilty on all four counts. (*Id*. at 10-12). On October 27, 1994, Petitioner entered an admission to the following two-count historical prior that was committed while Petitioner was on release: assault in the first degree (a class 3 felony)

and criminal attempt to commit sexual assault in the first degree (a class 3 felony).[2] (*Id.* at 14). At Petitioner's sentencing hearing on November 17, 1994, the trial court sentenced Petitioner for an aggravated term of 30 years on Count 1 (manslaughter with one historical prior committed while on release); an aggravated term of eight years on Count 2 (use of narcotic drugs with one historical prior committed while on release); an aggravated term of 4.25 years on Count 3 (use of marijuana with one historical prior committed while on release); and an aggravated term of 4.25 years on Count 4 (possession of drug paraphernalia with one historical prior committed while on release). (*Id.* at 17-25). The trial court ordered the sentences for Counts 2, 3, and 4 to run concurrently, but consecutively to Count 1. (*Id.*).

**A. Direct Appeal**

Following his 1994 convictions and sentencing, Petitioner appealed to the Arizona Court of Appeals. (Doc. 15-3 at 2-24). In its February 27, 1996 decision, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences on all four counts. (Doc. 15-1 at 10). On April 9, 1996, the Arizona Court of Appeals issued its order and mandate. (Doc. 15-3 at 29).

**B. Petitioner Filed Three PCR Petitions in State Court**

On January 16, 2009, over a decade after the conclusion of Petitioner's appeal, Petitioner filed a petition for post-conviction relief ("PCR") (the "First PCR Petition"). (Doc. 15-3 at 31). The First PCR Petition presented numerous claims challenging his sentence. In one claim, Petitioner argued that the trial court misapplied ARIZ. REV. STAT. § 13-604 when sentencing him. Unlike Petitioner's later PCR petitions, none of the claims alleged a violation of the ex post facto clauses of the state or federal constitutions.

On April 21, 2009, the trial court denied and dismissed the First PCR Petition. The trial court found that pursuant to Rule 32 of the Arizona Rules of Criminal Procedure, Petitioner's claims could not be raised in an untimely PCR proceeding. (Doc.

---

[2] Judgment on the historical prior was entered on December 15, 1978 in the District Court, Arapahoe County, Colorado. (Doc. 15-2 at 14).

15-3 at 46). Petitioner filed a petition for review in the Arizona Court of Appeals. (*Id*. at 49). On June 2, 2010, the Arizona Court of Appeals denied review. (Doc. 15-4 at 20). Petitioner then filed a petition for review in the Arizona Supreme Court, which denied review on December 6, 2010. (*Id*. at 22, 38).

On April 7, 2011, Petitioner filed a "Memorandum and Motion to Dismiss for Lack of Subject Matter Jurisdiction" in the trial court, which the trial court deemed to be Petitioner's second PCR petition (the "Second PCR Petition"). (*Id*. at 40; Doc. 15-5 at 2). In the Second PCR Petition, Petitioner claimed that the trial court lacked subject matter jurisdiction by asserting that the amended indictment was "void and fatally defective." (Doc. 15-4 at 46). Petitioner argued that:

> When the trial court allowed the amendment [to the indictment] to reflect a revised state statute that affixed a greater penalty and high [sic] classification than was prescribed at the time [Petitioner] was indicted with retrospective applications, it lost its jurisdiction of subject matter by way of violation [sic] the prohibition against passing any "ex post facto law."
>
> An indictment in a criminal case is the main means by which a court obtains subject matter jurisdiction, and is "the jurisdictional instrument upon which the defendant stands trial." The indictment is the foundation of the jurisdiction of the court. Thus if the indictment is "now" invalid, there is lack of subject matter jurisdiction.

(*Id*. at 47).

Petitioner also argued in his Second PCR Petition that the "trial court further erred and violated the ex post facto clause when it allowed a 17 year old prior to enhance [Petitioner's] sentence." (*Id*. at 52).

On May 12, 2011, the trial court dismissed the Second PCR Petition as successive and untimely. (Doc. 15-5 at 2). Petitioner filed a petition for review with the Arizona Court of Appeals, which the Court summarily denied on February 26, 2013. (*Id*. at 5, 17). Petitioner did not seek review in the Arizona Supreme Court.

On February 3, 2012, Petitioner returned to State court. Petitioner filed a "Motion for Clarification of Sentence, Computation of Good Time Credits, Parole Eligibility, and

Correct Sentence Expiration Dates." (*Id*. at 19). The trial court deemed the motion to be a third PCR petition (the "Third PCR Petition"). (Doc. 15-6 at 32). The Third PCR Petition argued that the Arizona Department of Corrections wrongfully determined that Petitioner is not eligible for parole. (Doc. 15-5 at 22). Petitioner acknowledged that the Third PCR Petition was his "third request for review and correction of sentence," but asserted that it was his first request for review "based on miscalculation of sentence and computation of good time which would allow for freedom from confinement." (*Id*. at 20). Petitioner contended that:

> For Ex Post Facto purposes, Arizona Statute that now denies [Petitioner] parole eligibility certification, denies earn[ed] release credits and other early release classification are in violation of State and Federal Ex Post Facto Laws as applied to [Petitioner] [whose] crimes occurred "before" the July 17, 1994 amendments to State Statute. . . .
>
> [Petitioner] has a vested right to receive, participate in and earn early release credits under the 1990 amendments where the State Legislature created two early release credit schemes that were established rules governing procedure for early release pursuant to A.R.S. 41-1604.09 when [Petitioner] committed his crimes on April 6, 1994. [Arizona Department of Corrections] should be maintaining a parole eligibility classification system that would allow [Petitioner] to earn early release credits for release . . . .
>
> A change in a sentence interpretation by the [Arizona Department of Corrections] which would require [Petitioner] to serve a longer sentence may amount to an Ex Post Facto if it increases in punishment where such administrative interpretation has the force and effect of law.

(*Id*. at 21).

In its response, the State argued that Petitioner had raised the same claim in his previous PCR petitions and that the Third PCR Petition should be summarily dismissed as untimely. (*Id*. at 41). Petitioner's reply reiterated his position that the Third PCR Petition is the first time Petitioner is challenging the Arizona Department of Corrections' calculation of Petitioner's release date and parole eligibility. (Doc. 15-6 at 3-4).

The trial court dismissed the Third PCR Petition on April 23, 2012, finding that

Rule 32.4(a) of the Arizona Rules of Criminal Procedure precluded Petitioner from raising the claim in an untimely PCR proceeding. (*Id*. at 33). The trial court also held that:

> In the event that [Petitioner] is claiming that he is being held beyond the expiration date of his sentence, *see* Ariz. R. Crim. P. 32.1(d), [Petitioner] has failed to show that he is in fact being held too long. Due to [Petitioner's] sentences for the other counts he was convicted and sentenced for, [Petitioner] is not scheduled for release from the Department of Corrections until 2027.

(*Id*.).

Petitioner did not file a petition for review with the Arizona Court of Appeals regarding the trial courts dismissal of the Third PCR Petition.

**C. Petitioner has Filed Three Federal Petitions for Writ of Habeas Corpus**

Petitioner filed his first Petition for Writ of Habeas Corpus on February 1, 2011 (the "2011 Habeas Petition"). (Doc. 1, CV-11-00210-PHX-JAT). On September 14, 2011, the District Court dismissed with prejudice the 2011 Habeas Petition as untimely. (Doc. 15, CV-11-00210-PHX-JAT).

On August 1, 2013, Petitioner filed a second Petition for Writ of Habeas Corpus (the "2013 Habeas Petition"). (CV-13-10561-PHX-JAT (DKD), Doc. 1). The 2013 Habeas Petition contained several grounds for relief. In Ground Four, Petitioner argued that the Arizona Department of Corrections is "refusing to allow Petitioner to meet the parole board in violation of the ex post facto clause." (CV-13-10561-PHX-JAT (DKD), Doc. 1 at 12).

On August 7, 2013, the District Court held that the 2013 Habeas Petition was a second or successive habeas petition as it raised claims that were or could have been adjudicated on their merits in an earlier petition. (CV-13-10561-PHX-JAT (DKD), Doc. 6 at 2). The District Court dismissed the 2013 Habeas Petition without prejudice to allow Petitioner the ability to obtain leave from the Ninth Circuit to file a second or successive § 2254 petition. (*Id*.).

On October 15, 2013, Petitioner filed an "Application for Leave to File Second or Successive Petition Under 28 U.S.C. § 2254" (the "Application for Leave") with the

Ninth Circuit Court of Appeals. (Case No. 13-73614 (9th Cir. Mar. 14, 2014), Doc. 1). In the Application for Leave, Petitioner presented multiple claims that he wished to raise in another habeas petition. In one claim, Petitioner argued that the Arizona Department of Corrections "is denying the Petitioner his vested right and interest and constitutional rights to receive good-time credits and placed in parole eligible class . . . ." (Case No. 13-73614 (9th Cir. Mar. 14, 2014), Doc. 1-2 at 9). Petitioner asserted that he should be allowed to proceed on that claim as the "[Arizona Department of Corrections] violation had not become rip[e] before the first habeas was filed." (Case No. 13-73614 (9th Cir. Mar. 14, 2014), Doc. 1-2 at 25). Attached to the Application for Leave is documentation pertaining to Petitioner's administrative appeal of the denial of parole eligibility. (Case No. 13-73614 (9th Cir. Mar. 14, 2014), Doc. 1-2 at 31-40). Petitioner's administrative appeal became final on February 22, 2012—the date the Arizona Department of Corrections' Director affirmed the decision of the Warden. (Case No. 13-73614 (9th Cir. Mar. 14, 2014), Doc. 1-2 at 31).

In its response, the State argued that Petitioner's denial of parole claim should be dismissed as Petitioner effectively raised the claim in the 2011 Habeas Petition. (Case No. 13-73614 (9th Cir. Mar. 14, 2014), Doc. 8-1 at 11). The State explained that the claim is "nothing more than an assertion that he is entitled to a 'vested parole hearing,' an aspect of a difference sentencing scheme he claims should have been applied to his convictions, an 'ex post facto' challenge he has already made in his first habeas petition." (*Id.*).

On March 14, 2014, the Ninth Circuit held that Petitioner could not have raised the claim regarding the denial of parole at the time he filed the 2011 Habeas Petition. (Case No. 13-73614 (9th Cir. Mar. 14, 2014), Doc. 11 at 1). This is because Petitioner's administrative appeal was completed on February 22, 2012 when the Arizona Department of Corrections denied Petitioner's claim. (*Id.*). The Court cited to *U.S. v. Buenrostro*, 638 F.3d 720, 725 (9th Cir. 2011) (per curiam), which held that prisoners may file second-in-time petitions based on events that do not occur until a first petition is

concluded. (*Id.*). The Ninth Circuit thus denied as unnecessary the Application for Leave as to the denial of parole claim. (*Id.*). As to Petitioner's remaining claims, the Ninth Circuit found that Petitioner failed to make the required prima facie showing that he meets one of the narrow exceptions under 28 U.S.C. § 2244(b)(2). (*Id.*). The Court therefore denied the Application for Leave as to those claims. (*Id.*).

On April 10, 2014, Petitioner filed the Current Habeas Petition. (Doc. 5). The Current Habeas Petition raises one ground for relief: "Not being allowed to meet the parole board, based on being calculated on a new code." (Doc. 5 at 6).

## II. FEDERAL HABEAS LAW

### A. Second or Successive Petition

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a "second or successive" Section 2254 petition must be dismissed unless it meets certain narrow exceptions. 28 U.S.C. § 2244(b). AEDPA does not define the term "second or successive." Rather, "second or successive" is a term of art derived from the equitable "abuse-of-the-writ" doctrine developed prior to AEDPA's enactment. *Hill v. State of Alaska*, 297 F.3d 895, 897-98 (9th Cir. 2002). Thus, as the Ninth Circuit has explained, "[t]hat a prisoner has previously filed a federal habeas petition does not necessarily render a subsequent petition 'second or successive.'" *Id.* at 898. "A habeas petition is second or successive only if it raises claims that were or could have been adjudicated on the merits." *McNabb v. Yates*, 576 F.3d 1028, 1029 (9th Cir. 2009); *see also Woods v. Carey*, 525 F.3d 886, 888 (9th Cir. 2008); *Panetti v. Quarterman*, 551 U.S. 930, 944 (2007) (stating that the Supreme Court has "declined to interpret 'second or successive' as referring to all § 2254 applications filed second or successively in time, even when the later filings address a state-court judgment already challenged in a prior § 2254 application.").

Permitting a petitioner to file a second or successive habeas petition is the exception, not the general rule. *Bible v. Schriro*, 651 F.3d 1060, 1063 (9th Cir. 2011). A petitioner who seeks to file a second or successive petition must first obtain from the

appropriate court of appeals an order authorizing the district court to consider the application. 28 U.S.C. § 2244(b)(3)(A). A three-judge panel of the court of appeals reviews the application and determines whether the petitioner has made a prima facie showing that the application meets the statutory exceptions set forth in 28 U.S.C. § 2244(b)(2) that permit the filing of the second or successive petition.[3] 28 U.S.C. § 2244(b)(3)(B). As such, the court of appeals acts as an initial gatekeeper or screener. The grant or denial of the court of appeals' authorization to file a second or successive application is not appealable. 28 U.S.C. § 2244(b)(3)(E).

If the court of appeals does authorize the filing of a second or successive petition, the district court must "conduct a thorough review of all allegations and evidence presented by the [petitioner] to determine whether the [petition] meets the statutory requirements for the filing of a second or successive [petition]." *U.S. v. Villa-Gonzalez*, 208 F.3d 1160, 1165 (9th Cir. 2000). A district court must also dismiss a claim in a "second or successive" petition that was presented in a prior application. 28 U.S.C. § 2244(b)(1).

Even if a subsequent petition is not a "second or successive" petition, it remains subject to procedural bars that may prevent a federal court from reviewing the merits of claims alleged in a habeas petition.

**B. Exhaustion-of-State-Remedies Doctrine**

The exhaustion-of-state-remedies doctrine is one potential bar to federal habeas relief. For over one hundred years, it has been settled that a "state prisoner must normally exhaust available state remedies before a writ of habeas corpus can be granted by the federal courts." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971) ("It has been settled since *Ex parte Royall*, 117 U.S. 241, 6 S. Ct. 734, 29 L.Ed. 868 (1886), that a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for

[3] A "prima facie showing" means "simply a sufficient showing of possible merit to warrant a fuller … exploration by the district court." *Cooper v. Woodford*, 358 F.3d 1117, 1119 (9th Cir. 2004) (en banc).

habeas corpus."). The rationale for the doctrine relates to the policy of federal-state comity. *Picard*, 404 U.S. at 275 (1971). The comity policy is designed to give a state the initial opportunity to review and correct alleged federal rights violations of its state prisoners. *Id*. In the U.S. Supreme Court's words, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." *Darr v. Burford*, 70 S. Ct. 587, 590 (1950); *see also Reed v. Ross*, 468 U.S. 1, 11 (1984) ("we have long recognized that in some circumstances considerations of comity and concerns for the orderly administration of criminal justice require a federal court to forgo the exercise of its habeas corpus power") (citations and internal quotation marks omitted).

The exhaustion doctrine is codified at 28 U.S.C. § 2254. That statute provides that a habeas petition may not be granted unless the petitioner has (i) "exhausted" the available state court remedies; (ii) shown that there is an "absence of available State corrective process"; or (iii) shown that "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1).

Case law has clarified that in order to "exhaust" state court remedies, a petitioner's federal claims must have been "fully and fairly presented" in state court. *Woods v. Sinclair*, 764 F.3d 1109, 1129 (9th Cir. 2014). To "fully and fairly present" a federal claim, a petitioner must present both (i) the operative facts and (ii) the federal legal theory on which his or her claim is based. *See Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (claims for relief in habeas corpus must reference a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief); *Arrendondo v. Neven*, 763 F.3d 1122, 1138 (9th Cir. 2014) ("To fairly present a federal claim, a state prisoner must present to the state courts both the operative facts and the federal legal theories that animate the claim."). This test turns on whether a petitioner "explicitly alerted" a state court that he or she was making a federal constitutional claim. *Galvan v. Alaska Department of Corrections*, 397 F.3d 1198, 1204–05 (9th Cir. 2005). "It is not enough that all the facts necessary to support the federal claim were before the

state courts or that a somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citation omitted); *see also Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), *as modified by* 247 F.3d 904 (9th Cir. 2001) (federal basis of a claim must be "explicit either by citing federal law or the decisions of federal courts, even if the federal basis is self-evident or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds"); *Rose v. Palmateer*, 395 F.3d 1108, 1111 (9th Cir. 2005) (stating that a petitioner must plead the federal nature of a claim with considerable specificity).

**C. Procedural Default Doctrine**

Procedural default may also bar habeas relief. If a claim was presented in state court, and the court expressly invoked a state procedural rule in denying relief, then the claim is procedurally defaulted in a federal habeas proceeding. *See, e.g., Zichko v. Idaho*, 247 F.3d 1015, 1021 (9th Cir. 2001). Even if a claim was not presented in state court, a claim may be procedurally defaulted in a federal habeas proceeding if the claim would now be barred in state court under the state's procedural rules. *See, e.g., Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).

Similar to the rationale of the exhaustion doctrine, the procedural default doctrine is rooted in the general principle that federal courts will not disturb state court judgments based on adequate and independent state grounds. *Dretke v. Haley*, 541 U.S. 386, 392 (2004). A habeas petitioner who has failed to meet the state's procedural requirements for presenting his or her federal claims has deprived the state courts of an opportunity to address those claims in the first instance. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).

As alluded to above, a procedural default determination requires a finding that the relevant state procedural rule is an adequate and independent rule. *See Id*. at 729-30. An adequate and independent state rule is clear, consistently applied, and well-established at the time of a petitioner's purported default. *Greenway v. Schriro*, 653 F.3d 790, 797-98 (9th Cir. 2011); s*ee also Calderon v. U.S. Dist. Court (Hayes)*, 103 F.3d 72, 74-75 (9th

Cir. 1996). An independent state rule cannot be interwoven with federal law. *See Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). The ultimate burden of proving the adequacy of a state procedural bar is on the state. *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003). If the state meets its burden, a petitioner may overcome a procedural default by proving one of two exceptions.

In the first exception, the petitioner must show cause for the default and actual prejudice as a result of the alleged violation of federal law. *Hurles v. Ryan*, 752 F.3d 768, 780 (9th Cir. 2014). To demonstrate "cause," a petitioner must show that some objective factor external to the petitioner impeded his or her efforts to comply with the state's procedural rules. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Robinson v. Ignacio*, 360 F.3d 1044, 1052 (9th Cir. 2004). To demonstrate "prejudice," the petitioner must show that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see also Carrier*, 477 U.S. at 494 ("Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied 'fundamental fairness' at trial.").

In the second exception, a petitioner must show that the failure to consider the federal claim will result in a fundamental miscarriage of justice. *Hurles*, 752 F.3d at 780. This exception is rare and only applied in extraordinary cases. *Wood v. Ryan*, 693 F.3d 1104, 1118 (9th Cir. 2012) (quoting *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). The exception occurs where a "constitutional violation has probably resulted in the conviction of one who is actually innocent of the offense that is the subject of the barred claim." *Wood*, 693 F.3d at 1117 (quoting *Schlup*, 513 U.S. at 327).

## III. ANALYSIS OF THE PETITION

The Current Habeas Petition contains one ground, which states: "Not being allowed to meet the parole board, based on being calculated on a new code."[4] (Doc. 5 at

---

[4] Construing the Current Habeas Petition liberally, the undersigned finds that Petitioner presents a cognizable federal claim as Petitioner asserts that he has been denied parole based on the retroactive application of state law, which constitutes a violation of

6). In its Response, the State argues that the Current Habeas Petition is a "second or successive" petition that should be dismissed under 28 U.S.C. § 2244(b)(1) because Petitioner effectively raised Ground One in the First Habeas Petition. (Doc. 15 at 16-21). But the Ninth Circuit held that Petitioner could not have raised Ground One at the time he filed the 2011 Habeas Petition, and thus <u>denied as unnecessary</u> the Application for Leave as to the claim. (Case No. 13-73614 (9th Cir. Mar. 14, 2014), Doc. 11 at 1). Implicit in this holding is that Ground One is not a "second or successive" claim. Therefore, as the Current Habeas Petition contains only the ground that the Ninth Circuit held was not ripe at the time the 2011 Habeas Petition was filed, the Current Habeas Petition is not a "second or successive" petition. *See McNabb*, 576 F.3d at 1029 ("A habeas petition is second or successive only if it raises claims that were or could have been adjudicated on the merits."); *Hill*, 297 F.3d at 897-98 (holding that a subsequent habeas petition is not necessarily "second or successive" if the prisoner did not have an opportunity to challenge the state's conduct in a prior petition); *Buenrostro*, 638 F.3d at 725 (holding that a "prisoner whose conviction and sentence were tested long ago may still file petitions relating to denial of parole, revocation of a suspended sentence, and the like because such claims were not ripe for adjudication at the conclusion of the prisoner's first federal habeas proceeding.").

As the Current Habeas Petition is not a "second or successive" petition, 28 U.S.C. § 2244(b) does not apply, contrary to Respondents' contention. As explained below, the undersigned finds that Petitioner failed to exhaust his available state remedies and Ground One is procedurally defaulted.

To exhaust state remedies in Arizona, a petitioner must fairly present his or her claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through an appropriate PCR petition. *Crowell v. Knowles*, 483 F.

---

the ex post facto clause of the federal constitution. (Doc. 5 at 6, "I then filed a formal grievance informing [the Arizona Department of Corrections] they were violating the state and federal ex post facto law by placing me under the new code which 'takes away' meeting the parole board.").

Supp. 2d 925, 928-30, 933 (D. Ariz. 2007) (following 1989 statutory amendment, Arizona Court of Appeals has jurisdiction over criminal convictions involving less than a death sentence); *cf. Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999) (citing pre-1989 statute).

Here, Petitioner presented the claim contained in Ground One in his Third PCR Petition filed in the trial court on February 3, 2012. Petitioner stated that:

> Pursuant to 41-1604.07 (A), [Petitioner] had a vested right to meet the parole board . . . .
>
> D.O.C. is denying [Petitioner] his vested right and interest, and constitutional rights to receive good time credits and placed in parole eligible class under the old code. Instead, D.O.C. has placed [Petitioner] under the new code. . . .

(Doc. 15-5 at 22).

On April 23, 2012, the trial court dismissed the claim on the grounds that it was untimely or successive pursuant to Rule 32 of the Arizona Rules of Criminal Procedure. (Doc. 15-6 at 33). Petitioner did not file a petition for review in the Arizona Court of Appeals regarding the trial court's denial. As such, Petitioner has failed to exhaust his state remedies. *Crowell*, 483 F. Supp. 2d at 928-30, 933. Yet returning to state court would be futile as the time to file a petition for review has expired. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999) (holding petitioner's claims procedurally defaulted where the petitioner failed to exhaust state remedies and the time for filing a petition for leave to appeal has past). Ground One is therefore procedurally defaulted. *Beaty*, 303 F.3d at 987 (a claim is procedurally defaulted "if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred") (quoting *Coleman*, 501 U.S. at 735 n. 1)).

Even if Petitioner did present Ground One in his First or Second PCR Petitions, the trial court dismissed the petitions based on Rule 32 of the Arizona Rules Criminal Procedure. Because the Arizona Court of Appeals denied review of the trial court's dismissal of the First and Second PCR Petitions, Petitioner's state remedies have been

exhausted. But an Arizona state court's dismissal of a PCR petition based on Rule 32 of the Arizona Rules Criminal Procedure constitutes an "adequate and independent" state ground. Accordingly, Ground One would still be barred from habeas review under the procedural default doctrine. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002) (determinations made under Arizona's procedural default rule are "independent" of federal law); *Ortiz v. Stewart*, 149 F.3d 923, 931–32 (9th Cir. 1998) (rejecting argument that Arizona courts have not "strictly or regularly followed" Rule 32 of the Arizona Rules of Criminal Procedure); *State v. Mata*, 185 Ariz. 319, 334–36 (Ariz. 1996) (waiver and preclusion rules strictly applied in post-conviction proceedings).

Moreover, the procedural default would not be excused as Petitioner makes no showing of cause for his noncompliance and actual prejudice or that a miscarriage of justice would result if the Court were not to consider Ground One. Accordingly, the undersigned recommends dismissal of Ground One.

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that the Court deny and dismiss the Current Habeas Petition (Doc. 5) with prejudice.

Accordingly,

**IT IS RECOMMENDED** that the Current Habeas Petition (Doc. 5) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave to proceed in forma pauperis on appeal be denied because dismissal of the Current Habeas Petition is justified by a plain procedural bar.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the parties have fourteen days within which to file a response to the

objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated this 17th day of June, 2015.

Eileen S. Willett
United States Magistrate Judge